MORTGAGE CLEARING CORPORATION,
Plaintiff in Error,

v.

BAUGHMAN LUMBER COMPANY, a corporation, M. J. Lee Construction Company, E. G. (Tex) Tannehill, and Mill Creek Lumber and Supply Company, Defendants in Error.

No. 41397.

Supreme Court of Oklahoma.

Nov. 14, 1967.

Jones & Michael, by Glen E. Michael, Tulsa, for plaintiff in error.

Harris, Graham & Harris, Bassett & Laughlin, Bartlesville, Gable, Gotwalls, Hays, Rubin & Fox, Tulsa, for defendants in error.

BERRY, Justice:

This is an appeal from the trial court's judgment decreeing priority of mechanics' and materialmen's liens against the claim of plaintiff in error, Mortgage Clearing Corporation, and ordering foreclosure and sale of property in satisfaction of senior liens.

Baughman Lumber Company was plaintiff in the original lien action brought against Jamestown Corporation, a builder, and its successor, London House-Bartlesville, Inc. The petition alleged the furnishing of building materials under contract with Jamestown for use in construction, and that there was due and owing $3,692.44, for which amount lien had been perfected; Jamestown's interest had been acquired by London House, whose rights were junior and inferior to plaintiff's lien. Plaintiff asked judgment decreeing the amount and superiority of this lien, foreclosure and application of the proceeds, and other equitable relief. Three additional parties (E. G. "Tex" Tannehill, M. J. Lee Construction Company and Mill Creek Lumber and Supply Company) were allowed to intervene, by reason of separate claims based upon similar perfected liens, which varied only as to dates, items and amounts. No conflict existed between these parties, and further reference to plaintiff may be understood to include all claimants above mentioned.

Plaintiff in error, Mortgage Clearing Corporation, herein designated Intervenor, also was granted leave to intervene and filed petition alleging plaintiff had assigned all rights and claims against the property prior to filing the foreclosure action; that plaintiff had included in its claim an amount ($738.70) for invoices dated prior to assignment (May 21, 1961), and all of which rights under such claim had been assigned to Intervenor by voucher and subsequent endorsement of the check paid for such assignment; the action sought recovery of this amount together with the total amount included in the assignment, and it was necessary for Intervenor to appear and defend its lien, which was valid and superior to the lienholders' claims. This petition made identical allegations in respect to other parties named, and also asked money damages for lienholders' breach of agreements not to file claims against the property. The controversy involved goes solely to the issue of priority between the lien claimants and Intervenor.

Intervenor's asserted ownership of these liens by assignment from the various lien claimants, is based upon the claim that it paid a portion of the claim of each lienholder and secured from each an assignment of that supplier's lien. It appears that during, or after, the time materials or labor was furnished for building construction, the Intervenor made certain payments which admittedly were less than the amount due under each lien. It was not contended such payments represented a compromise of a doubtful or disputed claim, and the trial court found specifically that these claims were liquidated and undisputed.

The basis of the claim presented to the trial court, and on appeal, evolves from language contained in written instruments furnished by Intervenor purportedly containing the contract between the parties. The "Request For Disbursement Voucher" was the builder's certification that plaintiff was entitled to the amount stated for materials or labor incorporated into the construction. This request, directed to Intervenor, also contained the following language, which the claimant was required to execute upon forms furnished:

"Request For Disbursement Voucher

[Conditions and Terms]

CLAIM

"For the purpose of inducing Mortgage Clearing Corporation to disburse funds in connection with the above referred property to him (it) the payee does hereby guarantee that he (it) has properly performed all of the work and delivered all of the material on the above described premises for which the payment is to be made and does certify that he (it) has.

paid for all labor and any material for which such payment is to be made. The payee agrees to accept the above stated sum in full and complete satisfaction for work and labor done and performed and/or any and all materials furnished on the premises described and agrees to assign its lien rights for such labor or material to Mortgage Clearing Corporation; the assignment to be incorporated in payee's endorsement of the check in payment of the herein claim.

"Payee does hereby appoint the Bearer hereof as his (its) agent with full and binding authority to execute all instruments necessary for and incidental to the payment of this voucher."

[properly signed and dated]

On the face of the check by which payment was made to the supplier there was this statement:

"NOTICE

"This check is in payment of all sums due payee to the date of the check on the property herein described. By endorsing hereof, payee assigns all his/its rights in such property to Mortgage Clearing Corporation, releases all rights and claims to the property, covenants never to file a claim against the property, represents that there are no unpaid sums due third parties and guarantees Mortgage Clearing Corporation that the work, services, material or other item for which this check is payment is satisfactory in all respects and in the event of defect agrees to forthwith correct the same to the satisfaction of Mortgage Clearing Corporation and to indemnify it against all loss by reason of claims or defective workmanship or services on the property. SEE FURTHER PROVISIONS AND ASSIGNMENT OF LIEN-RIGHTS ON THE REVERSE HEREOF."

The back of the instrument bore the following matter:

"READ BEFORE ENDORSING

"Payee in consideration of the payment hereof, with full knowledge of his/its rights under the law, does hereby assign to Mortgage Clearing Corporation all his/its rights, liens or claims, of whatsoever nature, to or against the property described on the reverse side hereof, through the date hereof.

"Upon endorsement hereof payee disclaims all right or claim to or against such property and covenants that so long as Mortgage Clearing Corporation has a claim against or interest in such property that he/it will not cause a lien to be filed against the property, a court action to be instituted in connection therewith or any form of claim to be made or asserted against the same; damages, including a reasonable attorney's fee, may be recovered on the breach hereof.

"Payee represents that the work, services, material or other item for which this check is payment is proper in all respects and there are no unpaid sums due third parties in connection therewith."

The case was submitted to the trial court upon the pleadings and exhibits, after pretrial conference. It was agreed the lien claimants had furnished labor and materials as alleged, and that Intervenor had made the payments which provided the basis of the claimed assignment of lienholder's rights. Summation of the handling of plaintiff's (Baughman) claim sufficiently reflects the transactions involved. On the date plaintiff signed the "Request" the sum of $251.96 was due for materials and plaintiff had no other unpaid bills. During the eight days ensuing before Intervenor executed its check for this amount plaintiff furnished · additional materials amounting to $783.70. Thus Intervenor's contention is that, under the instruments creating the contract, it acquired lien rights by virtue of the assignment not only of the initial amount claimed but for the additional ($783.70) amount representing material thereafter furnished. The issue relative to the legal effect of these payments, made by reason· of the executed instruments, was whether such transactions operated as com-

**138**

plete assignments of all the lienholders' rights and interests.

The trial court found the issues generally for plaintiff and against Intervenor and defendant London House-Bartlesville, Inc. as to superiority of the liens, and decreed foreclosure in satisfaction of the liens after crediting Intervenor with the amounts actually received by the lienholders. The court specifically found the provisions of the quoted instruments neither constituted nor effected an assignment of the liens or the lien rights asserted, all of which were co-equal but superior to any claim by defendant or Intervenor. Under an amended Journal Entry of Judgment defendant (London House) paid an amount into court satisfying all the lien judgments. It was provided also that Intervenor deposit into court an amount covering interest upon the amount of judgment pending disposition of appeal.

The single contention presented by a general argument, raises the sole question of whether execution of the claims for payment and acceptance and endorsement of Intervenor's checks constituted assignment, both present and future, of the mechanics' and materialmen's lien rights. The argument is that these instruments were contracts within contemplation of 15 O.S.1961 § 1 et seq., no ambiguity existed as to the effective date, duration or consideration for which the agreements were made; that the contracts were negotiable instruments within the meaning of the Commercial Code, 12A O.S.1961, Art. 3. Intervenor concludes that because plaintiff voluntarily executed the contracts and accepted the consideration, without denial of existence or an attempt to rescind, the contracts cannot be invalid. Such conclusion fails to accord recognition to elementary principles governing the construction of contracts.

By considering only the first sentence of the "Request", without regard to other language in the instruments, it would be possible to support Intervenor's argument. However it is an elementary rule that contracts must be construed in their entirety, and not from detached and isolated portions. 17A C.J.S. Contracts § 297, and Oklahoma citations at pp. 111, 115. The first sentence specified plaintiff warranted only work and material for which payment was to be made, and certified to having paid for the labor and material, for which Intervenor was to pay under plaintiff's assignment of its lien rights. No language in the "Request" can be construed as meaning plaintiff's assignment included any future lien rights up to and including an undetermined, future date. The other instruments contain references to work, services and materials "for which this check is payment." By this language plaintiff certified there were no unpaid sums due to third parties, and warranted the items to be satisfactory or to indemnify Intervenor in the event of loss by reason of defect in workmanship or services. This language cannot be interpreted as meaning that plaintiff certified there were no other unpaid sums due.

Other language in the "Request" refers to the assignment incorporated in "the payee's endorsement of the check in payment of the herein claim." This language is susceptible only of the meaning that the lien rights contemplated by the parties were to be the same rights assigned by endorsement of a check to be drawn thereafter, and not for assignment of all lien rights, whether paid for by Intervenor or not. That the language fairly must be so construed is best illustrated by reference to the lien of Lee Construction Company. The "Request" executed by Lee involved items amounting to $134.43, and was paid by Intervenor's check of the same date. At that time Lee had invoiced claims totaling $3,822.95 outstanding. To uphold Intervenor's interpretation of the meaning and intent of the instruments would mean that endorsement of the check drawn in payment of "the herein claim", as to which lien rights were assigned, provided consideration for Intervenor's acquisition of additional lien rights, valued at the greater amount, for which the plaintiff had made

no claim, and had not requested payment from Intervenor.

 Contracts must receive a reasonable construction according to intention of the parties at the time of execution, and if such intention can be ascertained from the language. A reasonable construction is preferred to one which is unreasonable, and where the language is contradictory, obscure, or ambiguous and susceptible of two constructions, it will be interpreted in a fair and rational sense, rather than in a manner which would make the contract unusual, inequitable, or such that reasonable men would be unlikely to enter into. 17 Am.Jur.2d § 252; National Products Co. v. Magnolia Pet. Co., 175 Okl. 596, 53 P.2d 669; Federal Land Bank, etc. v. Nicholson, 207 Okl. 512, 251 P.2d 490; Schuessler v. Northeast Development Co., Okl., 264 P.2d 737; Diehl v. Welsh, Okl., 393 P.2d 834; 15 O.S.1961 § 154.

The trial court correctly determined the instruments executed by plaintiff—lienholders—did not constitute assignment of the lien claims sued upon, and the liens asserted were properly ordered foreclosed.

Judgment affirmed.

All Justices concur.